Matthew E. Farmer, Bar No. 190484
mfarmer@littler.com
LITTLER MENDELSON P.C.
18565 Jamboree Road, Suite 800
Irvine, California 92612
Telephone: 949.705.3000
Fax No.: 949.724.1201

Attorneys for Defendants
AMERICAN TIRE DISRIBUTORS, INC., A DELAWARE CORPORATION.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAFAEL MARTINEZ, an individual and on a representative basis for others similarly situated,

Plaintiff,

v.

AMERICAN TIRE DISTRIBUTORS, Inc., and DOES 1 through 20, inclusive,

Defendants.

Case No.

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT ON THE BASIS OF DIVERSITY JURISDICTION**

**[28 U.S.C. §§ 1332, 1441, 1446]**

Action filed in State Court: December 8, 2021, San Bernardino County Superior Court Case No. 2133396

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF RAFAEL MARTINEZ AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant AMERICAN TIRE DISTRIBUTORS, Inc. ("American Tire") hereby removes the above-captioned action from San Bernardino County Superior Court in the State of California to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332,

1441(a) and (b), and 1446.

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action under the diversity of citizenship statute. 28 U.S.C. § 1332(a). In relevant part, the diversity statute grants district courts original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. As set forth below, this case meets all of the diversity statute's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. PLEADINGS, PROCESS, AND ORDERS

2. On December 8, 2021, Plaintiff Rafael Martinez ("Plaintiff") filed a Complaint ("Complaint") against Defendant in San Bernardino County Superior Court: *Rafael Martinez vs. American Tire Distributors, Inc.*, Case No. 2133396 ("the State Court Action"). The Complaint asserts the following causes of action on a class action basis: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest breaks; (5)failure to timely pay final wages; (6)failure to provide accurate itemized wage statements; (7) unfair and unlawful competition.

3. On February 8, 2022, Plaintiff filed a First Amended Complaint ("First Amended Complaint"), which asserts the following additional claims under the California Private Attorney General Act ("PAGA"): (8) failure to pay minimum wages; (9) failure to pay overtime wages; (10) failure to provide meal periods; (11) failure to provide rest breaks; (12) failure to timely pay wages; (13) failure to timely pay final wages; and (14) failure to provide accurate itemized wage statements.

4. On February 4, 2022, Plaintiff served Defendant with the Summons and Complaint. (Declaration of Matthew E. Farmer ("Farmer Decl.") ¶ 2 & Exh. "A.")

/ / /

5. On February 21, 2022, Plaintiff served Defendant with an Amended Summons and Complaint (Declaration of Matthew E. Farmer ("Farmer Decl.") ¶ 3 & Exh. "B.")

6. On March 3, 2022, Defendant filed an Answer in the form of a general denial and affirmative defenses to the Complaint in San Bernardino County Superior Court. (Farmer Decl. ¶ 4 & Exh. "C.")

7. Pursuant to 28 U.S.C. § 1446(d), Exhibits A-C constitute all process, pleadings, and orders filed in the State Court Action. (Farmer Decl. ¶ 5.) To Defendants' knowledge, no other process, pleadings, or orders related to this case have been filed or served by any party in the State Court Action. (*Id.*)

8. To Defendant's knowledge, no proceedings related hereto have been heard in the State Court Action and no other parties have been named or served with the Summons and Complaint in the State Court Action. (*Id.* at ¶¶ 6-7.)

## III. TIMELINESS OF REMOVAL

9. This Notice of Removal is timely filed as it is filed within thirty (30) days of February 4, 2022, the date of service of the Summons and Complaint, and within one year from the commencement of the State Court Action. See 28 U.S.C. § 1446(b), (c).

## IV. REMOVAL JURISDICTION

10. This Court has original jurisdiction of the State Court Action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Pursuant to 28 U.S.C. § 1441(a) and (b), the State Court Action may be removed to this Court by Defendant because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs, as set forth below.

### A. Diversity of Citizenship

#### 1. Plaintiff is a Citizen of California

/ / /

11. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

12. At the time Plaintiff commenced the State Court Action, and at the time of removal, Plaintiff was a citizen of the State of California. (Complaint, ¶ 16); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (place of residence provides "prima facie" case of domicile).

**2. Defendant American Tire Distributors is a Citizen of North Carolina**

13. American Tire is a corporation. At the time of the filing of the Complaint, American Tire was, and still is, organized and existing under the laws of the state of North Carolina, and is therefore a citizen of the State of North Carolina. (Declaration of Laurie C. Heavner ("Heavner Decl."), ¶ 3 & Exh. "D.")

14. It is well settled that a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). With regard to the corporate citizenship analysis, the United States Supreme Court has made clear that a single, uniform test – the "nerve center" test – shall be applied in determining a corporation's "principal place of business." See *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Although courts previously employed one of a number of tests to determine a corporation's "principal place of business," the United States Supreme Court clarified this uncertainty and

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

announced a single, uniform test to be applied in making such a determination. *Id*. In this regard, the Court held that the "nerve center" test should be used to determine a corporation's "principal place of business." *Id*. To this end, the Court reasoned that a corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's activities." *Id*. In other words, a corporation's "principal place of business" can be found where the corporation's "brain" is located. *Id*. at 95.

15. Applying the above analysis, the principal place of business, or "nerve center" of American Tire is located in North Carolina. American Tire has at all times had its principal place of business and headquarters in North Carolina. (Heavner Decl., ¶3.) American Tire's high-level officers direct, control, and coordinate the Company's corporate and business activities from North Carolina. (*Ibid.*) Accordingly, American Tire is not a citizen of California, but rather is a citizen of the State of North Carolina for purposes of determining diversity of citizenship.

**4. The Citizenship of the Doe Defendants Should Be Disregarded for Diversity Purposes**

16. For purposes of removal, the citizenship of defendants sued under fictitious names should be disregarded, and citizenship of only named defendants should be considered. 28 U.S.C. § 1441(b)(1).

17. Defendants Does 1 through 20 are fictitious. The Complaint does not state the identity or status of these fictitious defendants, nor does it state any specific allegation of wrongdoing against any fictitious defendants. Pursuant to § 1441(b)(1), the citizenship of these fictitious defendants cannot destroy the diversity of citizenship between the parties and should be disregarded. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998).

/ / /

/ / /

18. As demonstrated above, Plaintiff and Defendant are diverse because they are citizens of different states. *See* 28 U.S.C. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

**B. The Amount in Controversy Is Over $75,000**

19. Defendant denies the validity and merit of all of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, assuming *arguendo* for purposes of this removal only that Plaintiff is able to establish liability based on his claims, the amount in controversy exceeds the jurisdictional minimum. "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

20. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Supporting evidence is only required if the plaintiff contests or the court questions the allegations supporting removal. *Id.* at 554. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553. As one district court previously held:

> Under this standard, "the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the

> Plaintiff's claims for damages.'" When a "[d]efendant's calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy" is met.

*Cagle v. C&S Wholesale Grocers, Inc.,* 2014 U.S. Dist. LEXIS 21571 (E.D. Cal. Feb. 18, 2014); *see also Roa v. TS Staffing Servs., Inc.*, No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) (holding that since the defendant "was not required to submit evidence in support of its allegations, as *Dart Cherokee* teaches," the plaintiff's attack on the evidence was "fallacious").

21. The Complaint does not indicate a total amount of damages claimed; consequently, Defendant only needs to show by a preponderance of the evidence (that it is more probable than not) that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life Insurance Company*, 95 F.3d 856, 862 (9th Cir. 1996), *amended* 102 F.3d 398, 404 (9th Cir. 1996); *White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim"). The defendant must provide evidence showing that it is "more likely than not" that the amount in controversy exceeds that amount. *Id.*

22. Only the citizenship of the named parties in a putative class action, like the present case, are considered for diversity purposes. *Snyder v. Harris,* 394 U.S. 332, 339-340 (1969). Obviously if the amount in controversy included the entire class, the $75,000.00 threshold would be easily exceeded. However, using just Plaintiff's individual claims alone, it can be reasonably ascertained from the pleadings and the prayer for relief that the amount in controversy does, in fact, exceed $75,000. *See* Declaration of Matthew Farmer ("Farmer Decl."), ¶¶ 11 – 19.

23. Here, Plaintiff was employed by American Tire for about 13 years, from 2006 to 2019, or approximately 676 weeks, earning $20.29 per hour. Leavner Decl., ¶ 4. While Defendant denies fully any and all liability, damages, and propriety of class certification, using Plaintiff's complaint allegations, it can be reasonably ascertained from the pleadings and the prayer for relief that the amount in controversy does, in fact, exceed $75,000.

24. Defendants briefly analyze below each of the wage and hour claims alleged in Plaintiff's Complaint:

**1. Missed Meal Breaks**

25. Plaintiff's vague assertions suggest he worked through, or was not provided duty free meal periods each day he worked: "Plaintiff and the Represented Employees were subjected to meal period violations when they were: (1) unable to take a meal period due to workload, (2) forced to take an on-duty meal period while under the control of the Company, (3) forced to take a shortened meal period, (4) forced to take a meal period after the 5th hour of work, and (5) not provided a mandated second meal period for shifts in excess of 10 hours. (Complaint, ¶ 6; *see generally* Complaint, ¶¶ 1 -12.) Though Plaintiff does not explicitly state in the Complaint how many meal breaks he worked but was not compensated for, for purposes of establishing removal jurisdiction, it is reasonable to assume a violation rate of five per week (one meal period violation per work day) based on the Complaint's language that there was a willful policy and practice of denying breaks. *See, e.g., Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (approving of the use of a 100% violation rate in removal calculations because the plaintiff is the master of her complaint and could thus avoid removal by limiting the allegations); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (same); *see also Thomas v. Aetna Health of California, Inc.,* 1:10–CV–01906–AWI, 2011 WL 2173715 (E.D.Cal. June 2, 2011) ("requiring Defendants to forecast an exact

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

violation rate would essentially force a removing defendant to prove the plaintiff's case"); *Bryant v. Serv. Corp. Int'l,* C 08–01190SI, 2008 WL 2002515 at *6 (N.D.Cal. May 7, 2008) ("defendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit to the opposing party and to the Court that a certain number of wage and hour violations did indeed occur"). Multiplying 52 weeks times 5 equals 260 workdays. Multiplying 260 times the $20.29 meal period premium equals $5,275.40. *See* Farmer Decl., ¶ 13.

**2. Missed Rest Breaks**

26. Plaintiff alleges that Defendants "also failed to provide Plaintiff and the Represented Employees with 10 minutes of net rest break for every 4 hours worked…" and that "on occasions when Plaintiff and the Represented Employees worked longer shifts, Defendants failed to authorize and/or permit additional mandated rest breaks." (Complaint, ¶7.) As discussed above, though Plaintiff does not explicitly state in the Complaint how many rest breaks he worked but was not compensated for, for purposes of establishing removal jurisdiction, it is reasonable to assume a violation rate of five per week (one rest period violation per work day) based on the Complaint's language that there was a willful policy and practice of denying breaks. *See, e.g., Coleman, supra*; *Muniz*, *supra*; *Thomas*, *supra; Bryant*, *supra*. Multiplying 52 weeks times 5 equals 260 work days. Multiplying 260 times the $20.29 rest period premium equals $5,275.40. *See* Farmer Decl., ¶ 14.

**3. Failure to Pay Overtime**

27. Plaintiff asserts he and "the Represented Employees were not paid proper overtime wages due to Defendants' failure to pay overtime at the required rate of time and one-half of the regular rate of pay." (Complaint, ¶ 5; *see generally,* Complaint, ¶¶ 1 - 12.) Plaintiff regularly worked 8 and 12-hour shifts, five days a week. (Complaint, ¶ 48; Leavner, Decl., ¶ 3.) Assuming 20 hours of overtime each week for

/ / /

52 weeks equals 1,040 hours of allegedly unpaid overtime. Multiplying 520 times $30.44 (1.5 times regular rate of pay) equals $31,652.40. *See* Farmer Decl., ¶ 15.

**4. Failure to Pay Minimum Wage**

28. Plaintiff also baldly claims that he was not paid for all hours worked. (Complaint, ¶¶ 36 - 45 ("Plaintiff and the Represented Employees were not provided proper minimum and regular wages…" He does not allege how many uncompensated hours exist, but plaintiffs alleging such claims tend to claim a large number of uncompensated hours. *See* Farmer Decl., ¶ 16. Assuming Plaintiff alleges 100 uncompensated hours, the total unpaid wages would equal $2,029.00. *See* Farmer Decl., ¶ 12.

**5. Waiting Time Penalties**

29. Plaintiff asserts he is entitled to waiting time penalties. (Complaint, ¶¶ 79 -86.) Plaintiff regularly worked 8.5 hour days (Leavner Decl., ¶ 3); 8 hours at his regular rate of $20.29 per hour and 0.5 hours of overtime at a rate of $30.44 per hour, for a daily rate of pay that equals $177.54. Multiplying that amount by 30 days equals $5,326.20. *See* Farmer Decl., ¶ 17.

**6. Inaccurate Wage Statements**

30. Plaintiff further alleges that his wage statements were non-compliant. (Complaint, ¶¶ 87 - 95.) Labor Code Section 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Labor Code § 226(a). Plaintiff was paid biweekly. (Leavner Decl., ¶ 3.) Assuming 26 pay periods with inaccurate wage statements, the penalties equal $1,300. *See* Farmer Decl., ¶ 18.

/ / /

/ / /

**8. Violation of PAGA**

31. Plaintiff seeks recovery of "all applicable and available PAGA remedies under PAGA on behalf of himself and other aggrieved employees for violations of Labor Code §§ 200, 201, 202, 203, 226, 226(a), 226.7, 510, 512(a), 1102.5, 1174, 1194, 1194.2, 1197, 1198, and 1198.5. (First Amended Complaint, ¶¶ 117 - 161.) He seeks either $100 per pay period for an initial violation and $200 for a subsequent violation for those Labor Code sections not specifying a penalty, or the amount specified for other violations. (First Amended Complaint, Prayer ¶ 9.)

32. Assuming Plaintiff's allegations are true, Plaintiff would be awarded the following penalties per pay period: $50 for missed meal periods (Labor Code § 558); $50 for missed rest breaks (*id.*); $50 for failure to pay overtime (*id.*); $100 for failure to pay minimum wage (Labor Code § 1197.1); $100 for inaccurate wage statements (Labor Code § 2699(f)). Added together, the total penalties assessed per pay period is $350. Multiplying $350 by 26 pay periods equals $9,100. In addition, waiting time penalties in the amount of $100 would be assessed. (Labor Code § 2699(f)). So, the total amount of PAGA penalties would be $9,200. Moreover, as a PAGA claim is not deemed to be a class action under California law (*Kim v. Reins Int'l Calif., Inc.* (2020) 9 Cal.5th 73, 86), but rather a representative action on behalf of the named plaintiff, similarly situated aggrieved employees, and the California government, penalties sought on this cause of action alone would satisfy the jurisdictional minimum for diversity purposes. (*Patel v. Nike Retail Serices, Inc.* 58 F.Supp.3d 1032 (N.D.Cal. 2014) (holding that PAGA penalties are to be used when determining amount in controversy for removal purposes); *Vieyara-Flores v. Sika Corp.*, 2019 WL 2436998 (C.D.Cal. 2019) (applying PAGA penalties in assessing whether amount in controversy threshold has been met); *Thomas v. Aetna Health of Calif., Inc.*, 2011 WL 2173715 (E.D.Cal. 2011) ("PAGA penalties may be aggregated for purposes of calculating the amount in controversy.").)

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

**9. Summary of Penalties and Damages**

33. Adding up all of the above-mentioned penalties equals $60,058.40. Taking into account the claim for reasonable attorneys' fees that stems from Plaintiff's claims, discussed below, the amount in controversy easily exceeds $75,000.

**10. Attorneys' Fees**

34. Plaintiff's Complaint also seeks the recovery of his attorney's fees. (Complaint, ¶¶ 45, 57, 92, 95, 108; Prayer for Relief ¶ 5.) Attorney's fees are also included in the amount in controversy calculation when the underlying claims permit recovery of attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Any estimate of attorney's fees includes fees over the life of the case, not just the fees incurred at the time of removal. *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002); *Cagle v. C&S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *10-11 (E.D.Cal. 2014) (holding that an estimate of the amount of attorney hours through trial was a reasonable estimate for purposes of determining amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D.Cal. 2002) (holding that for determining amount in controversy, attorneys' fees should be assessed through trial, and finding amount in controversy met in part by reasonable estimate of fees). While Defendant disputes such an award is appropriate, if awarded by the Court, any award of attorney's fees that Plaintiff is to receive if he prevails on his claims would place the amount in controversy well beyond the $75,000 threshold.

35. As discussed above, the wage and hour penalties add up to $60,945.00. At a minimum, and assuming liability (which Defendants dispute), should Plaintiff's claims proceed as an individual claim, it is more than reasonable to believe that his attorney's fees will equal to or exceed $14,056. (Farmer Decl., ¶¶ 13 - 19.)

36. Based upon the pleadings, it is clear that Defendants have carried their burden of demonstrating by a preponderance of the evidence that the amount in

controversy in this matter exceeds the jurisdictional minimum of $75,000.00. Removal of this action is therefore proper. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (finding that when "complaint is unclear and does not specify 'a total amount in controversy,'" the proper burden of proof for removal is a preponderance of the evidence). *See also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) (removal proper where "the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); *accord Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiff's allegations, sufficient to support finding that jurisdictional limits satisfied); *Ditcharo v. UPS*, No. 09-30993, 2010 U.S. App. LEXIS 9012, **5-7 (5th Cir. April 29, 2010) (adopting *Luckett* "preponderance of the evidence" standard). Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a).

**VII. VENUE**

37. Venue lies in the Central District of California pursuant to 28 U.S.C. sections 84(b), 1441(a), and 1446(a). Plaintiff originally brought the State Court Action in the Superior Court of the State of California, County of San Bernardino.

**VIII. NOTICE OF REMOVAL**

38. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, the undersigned is providing written notice of such filing to Plaintiff's counsel of record: Brian J. Mankin, brian@lmlfirm.com, and Peter J. Carlson, peter@lmlfirm.com, Lauby, Mankin, & Lauby LLP, 4590 Allstate Drive, Riverside, CA 92501 (Farmer Decl. ¶ 8.) In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino. (*Ibid.*)

WHEREFORE, American Tire prays that the Court remove this civil action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California.

Dated: March 7, 2022

LITTLER MENDELSON P.C.

Matthew E. Farmer

Attorneys for Defendants
AMERICAN TIRE DISRIBUTORS, Inc., a Delaware corporation.

C:\Users\JDrudge\ND Office Echo\VAULT-W8EGR9J0\2022.03.04 Def's Ntc of Removal Federal Court